UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CV-82076-DMM

STEPHANIE BENAVIDES BAKER,

    Plaintiff,
v.

CITY OF DELRAY BEACH and
JAVARO A SIMS, individually,

    Defendants.
_____/

**DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants, City of Delray Beach (the "City"), Police Chief Javaro A. Sims ("Chief Sims" and collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss the Complaint filed by Plaintiff, Stephanie Benavides Baker ("Baker" or "Plaintiff"). As grounds for their Motion, Defendants state as follows:

**PRELIMINARY STATEMENT**

Plaintiff, a Hispanic, white, female police officer currently employed with the City of Delray Beach Police Department, alleges the City discriminated against her based on her gender, race, national origin, and/or her age, in violation of the Equal Protection Clause of the Fourteenth Amendment ("§ 1983"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Florida Civil Rights Act, Fla. Stat. § 760.01, *et seq* ("FCRA"). Primarily, Plaintiff alleges she was passed over for promotion to sergeant multiple times in favor of men, women, Hispanics, whites, and blacks. Surprisingly, throughout the Complaint, Plaintiff identifies employees who are *within* Plaintiff's protected class (woman,

white, or Hispanic) and who were treated more favorably—thereby eviscerating her own allegations of discrimination.

Defendants respectfully seek dismissal of Plaintiff's Complaint on a number of grounds. ***First***, Chief Sims is entitled to qualified immunity as he was acting within his discretionary authority as police chief when he allegedly passed on Plaintiff for promotion. Plaintiff fails to satisfy the heightened pleading standard imposed in a § 1983 action against individuals entitled to qualified immunity. ***Second***, Plaintiff fails to adequately allege a custom or policy adopted by the City's final policymakers that resulted in a constitutional violation. A municipality is only liable under § 1983 when execution of a government's policy or custom inflicts the injury that the government as an entity is responsible under § 1983. ***Third***, each count contained in Plaintiff's Complaint falls woefully short of the pleading requirements set forth in Rule 8, Fed. R. Civ. P. Regardless of the basis of discrimination alleged, Plaintiff also fails to allege in non-conclusory fashion that she was qualified for the position of sergeant and that similarly situated individuals outside Plaintiff's protected class were either equally or less qualified for the position.

## FACTUAL BACKGROUND[1]

A. The Parties.

Plaintiff is a white and/or Hispanic female Master Police Officer over the age of 40 employed by the City. (Compl. at ¶¶ 1, 4). Defendant, City of Delray Beach, is a Florida municipal corporation. Defendant Chief Sims is and has been the Chief of Police for the City since February 12, 2019. (Compl. at ¶ 6).

---

[1] The Facts referred to in this Motion are based solely on the facts as plead by Plaintiff in her Complaint.

B. <u>Plaintiff's Allegations in Support of Her Gender Discrimination Claim.</u>

To support her claim of gender discrimination, Plaintiff alleges that she was "passed over" for promotion to sergeant in favor of other employees, both men and women. (Compl. at ¶ 8). Plaintiff also claims that was limited to nine days as "acting sergeant" and was denied the acting sergeant role while other officers, both men and women, were given longer assignments and/or were selected for the acting sergeant position. (Compl. at ¶¶ 10(a), (b)(ii)). In total, Plaintiff identifies eight other employees who were promoted to sergeant, ***including two women.*** (*Id.* at ¶¶ 8(b), (e)). Plaintiff then identifies three men and one woman who were given acting sergeant assignments. (*Id*. at ¶ 10(b)(ii)). Yet, Plaintiff sets forth no facts to indicate—even in conclusory terms—that any of the identified officers were unqualified for their positions or assignments. (*See generally*, Compl.). Further, Plaintiff states in conclusory fashion that she was "qualified" to be promoted sergeant, yet, she makes no statement as to what those qualifications were. (Compl. at ¶ 7).

Plaintiff alleges that there is an "unofficial policy or custom of discriminating against white women" because Chief Sims:

- demanded the separation of Mary Santos-Olsen, a white female, when they were both assistant chiefs (*Id.* at ¶ 9(a));

- suspended Lieutenant Nicole Guerriero as a result of an internal affairs investigation of which she was the subject (*Id.* at ¶ 9(b));

- passed over Lieutenant Guerriero for promotion to Captain or Assistant Chief and removed her as commander of internal affairs (*Id.* at ¶¶ 9 (d), (c)); and

- suspended Officer Nicole Lucas with pay pending an internal affairs investigation for disparaging the Black Lives Matter movement and then "backed off" the initial 24-hour suspension in favor of issuing her a written reprimand instead. (*Id.* at ¶ 9(e)).

C.  Plaintiff's Allegations in Support of Her Claim of Race Discrimination.

Astonishingly, Plaintiff contends the City discriminated against her because of race. Plaintiff, a Mexican-American, conflates race with national origin throughout the Complaint and, at times, appears to assert her race is both Hispanic and white. (*See generally*, Compl.). At the outset, there are no facts alleged related to any other employee's national origin. (*Id.*). It is therefore impossible to know who is outside of Plaintiff's protected class for purposes of analyzing her race/national origin claim as anything but a claim for discrimination based on race.

Plaintiff claims that Chief Sims had a "racial predisposition," yet does not allege that there was some "unofficial policy or custom" of discriminating based on race. (Compl. at ¶ 22). It is unclear what is meant by "racial predisposition" since the Complaint alleges that Chief Sims treated Asian, white, black, and Hispanic employees better than Plaintiff. (Compl. at ¶¶ 8, 22(d)). In support of her allegation of race discrimination, Plaintiff cites to a number of actions taken by Chief Sims. (Compl. at ¶ 22). However, the only actions that appear to have actually impacted Plaintiff were: (1) failing to promote Plaintiff to sergeant; (2) reversing Sergeant Jeffrey Caldwell's choice in 2010[2] of Plaintiff as juvenile detective and replacing Plaintiff with a black woman; and (3) denying Plaintiff permission to attend a leadership class in 2018 and 2019. (Compl. at ¶¶ 22(c), (d)). Further, there are zero facts in the Complaint that suggest that either reversing Sergeant Caldwell's choice or denying Plaintiff permission to attend the leadership classes are "adverse employment actions." (*See generally*, Compl.). Again, Plaintiff identifies both white and Hispanic

---

[2] Any allegations of discrimination arising before November 15, 2017 are barred by statute of limitations. Fla. Stat. § 95.11(3); *Wilson v. Garcia*, 471 U.S. 261, 276 (1985) (holding that because § 1983 does not contain a specific statute of limitations, courts apply the statute of limitations that governs personal injury tort actions in the state where the claim arose).

employees who were allegedly treated more favorably than Plaintiff in these various situations. (Compl. at ¶ 22(d)).

### D. Plaintiff's Allegations in Support of Her Claim of Age Discrimination

Plaintiff's age discrimination claim is even more tenuous than her claims of gender or race discrimination. Indeed, her age claim is based on just one conclusory allegation: Plaintiff was not promoted to sergeant because of her age in favor of other employees "the majority of whom were substantially younger." (Compl. at ¶ 1). Plaintiff states she is 41 years of age, yet fails to identify the age of even one other comparator. (Compl. at ¶ 1).

## MEMORANDUM OF LAW

### I. Motion to Dismiss Standard.

To avoid dismissal under Rule 12(b)(6), a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

A motion to dismiss that is based on qualified immunity from civil rights liability requires Plaintiff to meet a higher burden. *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992). A plaintiff is held to a "heightened pleading" standard, and must set forth in detail the facts upon which she bases her claim. *Id.* In ruling on a motion to dismiss, it is the officer's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *Behrens v.*

*Pelletier*, 516 U.S. 299 (1996). Unless a plaintiff's allegations state a violation of clearly established law, a government official is entitled to dismissal before the commencement of discovery. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## II. Chief Sims is Entitled to Qualified Immunity.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is designed to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citation omitted). A government official "performing discretionary functions is generally shielded from liability for civil damages insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011). A government employee acts in his discretionary authority when "performing a legitimate job-related function […] through means that were within his power to utilize." *Holloman v. Harland,* 370 F. 3d 1252, 1265 (11th Cir. 2004).

Whether a government employee is entitled to qualified immunity is determined by a two-step inquiry. A law enforcement officer is entitled to qualified immunity "unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a

constitutional violation; and second, that the illegality of the officer's actions was clearly established at the time of the incident." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)(citation omitted). The District Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S.Ct. 808, 822 (2009). The qualified immunity analysis "is a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

      A.      <u>Chief Sims Acted Within the Scope of his Discretionary Authority.</u>

Plaintiff has not, and cannot, dispute that the Chief Sims was acting within his discretionary authority when he allegedly passed over Plaintiff for promotion to sergeant or acting sergeant, or when he did not permit Plaintiff to attend a leadership class. In fact, nowhere in her Complaint does Plaintiff allege any facts demonstrating that the Defendants acted outside of their discretionary authority. Promotional decisions within the Police Department fall squarely within Chief Sims' powers and job responsibilities as Chief of Police. Defendants have therefore met their burden, and Plaintiff bears the burden of pleading a constitutional violation that was clearly established when the violation occurred. "Once a government official demonstrates that he is potentially entitled to qualified immunity, the burden shifts to the plaintiff to demonstrate that the official is not actually entitled to it." *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004).

      B.      <u>A Constitutional Violation Has Not Been Sufficiently Alleged Against Chief Sims.</u>

To maintain a claim under 42 U.S.C. § 1983, "a plaintiff must allege facts showing that the defendant's act or omission, done under the color of state law, deprived him of a right, privilege, or immunity protected by the Constitution or the laws of the United States." *Emory v. Peeler*, 756 F.2d 1547, 1554 (11th Cir. 1985) (citation omitted). Claims brought under 42 U.S.C. § 1983 for discrimination require proof of discriminatory intent and are subject to the same analytical

framework as claims under Title VII of the Civil Rights Act of 1964. *Earle v. Birmingham Bd. of Educ.*, No. 20-10763, 2021 WL 162330, at *2 (11th Cir. Jan. 19, 2021). The Eleventh Circuit imposes a heightened pleading standard on claims asserted against individuals capable of asserting a qualified immunity defense. *See Dalrymple v. Reno,* 334 F.3d 991, 996-97 (11th Cir. 2003), *cert. denied,* 541 U.S. 935 (2004) ("In examining the factual allegations of the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. . . . Plaintiffs' allegations of a causal connection between Reno's supervisory actions and the alleged constitutional violations by the agents on the scene are vague and conclusory and fail to meet the heightened pleading requirements for civil rights cases involving qualified immunity."). In order to state a plausible claim that she was discriminated against on the basis of her gender or race, Plaintiff must allege facts, not mere conclusory statements, which would support a finding of either direct or circumstantial evidence of discrimination.

Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F. 3d 1079, 1086 (11th Cir. 2004) (abrogated on other grounds)(citations omitted). Here, Plaintiff fails to allege any direct evidence of gender or race discrimination (because there are none). Plaintiff does not allege that Chief Sims made any discriminatory statements or remarks toward Plaintiff.

Absent direct evidence of discrimination, the Eleventh Circuit has adopted a four-prong test that allows a plaintiff to establish a *prima facie* case with circumstantial evidence. *Earle v. Birmingham Bd. of Educ.*, 843 F. App'x. 164, 166 (11th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (the "*McDonnell Douglas* Test"). To that end, Plaintiff must allege facts that show: (1) she is a member of a protected class; (2) she was qualified and

applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted.[3] *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010).

In this matter, Plaintiff fails to allege sufficient facts to satisfy prongs two through four of the *McDonnell Douglas* Test. First, Plaintiff fails to allege any facts showing that she was qualified for the position of sergeant other than the following conclusory allegations:

> [Plaintiff] has been a Delray Beach police officer since October 11, 2005 (16 years) and has held the rank of Master Police Officer since October 2019 (two years). She has at all times possessed the qualifications to be promoted to sergeant and she never suffered discipline.

(Compl. at ¶ 7). Nothing about these allegations demonstrate Plaintiff's qualifications. Plaintiff does not explain in any detail the significance of holding the rank of Master Police Officer. Plaintiff also does not allege anywhere in the Complaint that she applied for or was eligible for promotion to sergeant. "[A]n employee who fails to apply for a particular position **cannot establish** a *prima facie* case of discriminatory failure to promote." *Giles v. BellSouth Telecomm., Inc.*, 542 F. App'x 756, 760 (11th Cir. 2013) (*citing Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004)) (emphasis added). Accordingly, Plaintiff has failed to allege sufficient facts to satisfy prongs two and three of the *McDonnell Douglas* Test.

Even if Plaintiff set forth facts to show she was qualified for sergeant, she still fails to allege that the chosen employees were outside of her protected class and equally or less qualified. Plaintiff alleges that six men scored lower than she did in the promotional ranking. (Compl. at ¶

---

[3] "[T]o prevail on a claim of failure to promote, a plaintiff may establish a *prima facie* case of sex discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." *Wilson v. B/E Aerospace, Inc.*, 376 F. 3d 1079, 1089 (11th Cir. 2004) (abrogated on other grounds).

11(a)). However, taking this allegation as true for the purposes of this Motion, this does nothing to show whether the comparators were equally or less qualified for the position, or whether "ranking" was even a requirement for the sergeant position. (*See generally*, Compl.). Further, a number of alleged comparators are within Plaintiff's protected class as some are women, Hispanic, or white. (Compl. at ¶¶ 8, 10). Plaintiff has therefore failed to allege sufficient facts to satisfy the fourth prong of the *McDonnell Douglas* Test.

Accordingly, Plaintiff cannot sustain her burden of showing that Chief Sims violated her Fourteenth Amendment rights and, therefore, this Court should find that Chief Sims is entitled to qualified immunity.

    C. <u>Plaintiff Cannot Carry Its Burden to Demonstrate That the Law Was Clearly Established.</u>

Even assuming *arguendo* that Plaintiff has properly pled a violation of her Fourteenth Amendment rights (which she has not), Plaintiff cannot demonstrate that at the time Chief Sims allegedly passed on promoting Plaintiff to sergeant, that the unlawfulness of his actions were clearly established. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotations omitted). "For the law to be clearly established, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1285 (11th Cir. 2000) (internal quotations omitted). In order to make such a showing, Plaintiff "must point to law as interpreted by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida" of such factually similar circumstances to have put Chief Sims on notice that his conduct, as alleged by Plaintiff, on the date of the events amounts to a constitutional violation. *Mercado v.*

*City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005), r*eh'g en banc denied*, 159 F. App'x. 183 (11th Cir. 2005). Plaintiff cannot rely on "general, conclusory allegations" or "broad legal truisms." *Mohammed v. Wainright*, 839 F.2d 1422, 1424 (11th Cir. 1987).

Here, Plaintiff cannot meet her burden of showing that Chief Sims knew his actions violated clearly established constitutional rights (i.e., that he was discriminating against Plaintiff because of her gender or race when he made promotional decisions within the police department). A constitutional right is clearly established "only if its contours are sufficiently clear that a reasonable official would understand what he is doing violates that right." *Vaughan v. Cox*, 316 F.3d 1210, 1212 (11th Cir. 2003). The salient question is whether the law at the time of the alleged violation gave officials "fair warning" that their acts were unconstitutional. *Holmes v. Kucynda*, 321 F.3d 1069, 1078 (11th Cir. 2003).

In this matter, other than stating in conclusory fashion that Chief Sims "exhibited willful disregard of Plaintiff's clearly established Fourteenth Amendment right to be free from sex discrimination . . ." (Compl. at ¶ 12), Plaintiff fails to assert any supporting facts that show Chief Sims knew that his promotional decisions were a violation of Plaintiff's Fourteenth Amendment rights. As explained in Section II.B. above, Plaintiff does not even allege that she applied or was qualified for the sergeant position. In fact, as alleged in the Complaint, Chief Sims promoted a number of people within Plaintiff's protected class to sergeant—including white and Hispanic employees and at least two female employees. (Compl. at ¶ 8).

As such, Plaintiff has not plead, and cannot establish, constitutional violations by the individual Defendant. Therefore, Chief Sims is entitled to qualified immunity, and must be dismissed from this case.

### III. Plaintiff Fails to State a Claim of Gender or Race Discrimination under § 1983 Against the City and Chief Sims in Counts I and III.

Plaintiff fails to adequately allege underlying facts supporting a claim that the City had a policy or custom that caused her injury.

A plaintiff seeking to establish liability against a municipality under 42 U.S.C. § 1983 must show that the deprivation of her federal right was attributable to the enforcement of a municipal custom or policy. *See Monell v. Department of Social Serv.,* 436 U.S. 658 (1978) and *Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir. 1997) ("the requirement of a municipal policy or custom constitutes an essential element of a § 1983 claim that a plaintiff must prove in order to establish municipal liability").

"The Supreme Court has placed strict limitations on municipal liability under § 1983." *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998). A municipality is not liable under § 1983 on the basis of *respondeat superior*. *See Monell*, 436 U.S. at 91; *Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) ("a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."). Rather, a municipality is only liable under § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. This requires that "a plaintiff seeking to impose liability on a municipality under § 1983 . . . identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. Of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 403. Further, the Plaintiff must show "that the municipal action was taken with deliberate indifference to its known or obvious consequences." *Sturdivant v. City of Atlanta*, 596 F. App'x 825, 830 (11th Cir. 2015).

Indeed, the requirement that Plaintiff specifically plead a municipal policy or custom at issue "constitutes an essential element of a § 1983 claim that a plaintiff must prove in order to establish municipal liability." *Buckner*, 116 F.3d at 453. A policy or custom "can be either a written custom or policy, such as an ordinance, or an unwritten practice that is so widespread and 'so permanent and well settled as to constitute a custom or use with the force of law.'" *Flowers v. Patrick*, 869 F. Supp. 2d 1331, 1334-35 (M.D. Ala. 2012) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

Here, Plaintiff contends that there is an unofficial policy or custom of discriminating against white women since Chief Sims took office. (Compl. at ¶ 9). To support this contention, she alleges Chief Sims: (1) demanded the separation of Mary Santos-Olsen, a white female; (2) suspended Lieutenant Nicole Guerriero as a result of an internal affairs investigation; (3) passed over Lieutenant Guerriero for promotion to captain or assistant chief and removed her as commander of internal affairs; and (4) suspended Nicole Lucas with pay pending an internal affairs investigation for disparaging the Black Lives Matter movement and then "backed off" the initial 24-hour suspension in favor of issuing her a written reprimand instead. *Id.* Noticeably absent from Plaintiff's allegations are any facts that suggest that (1) Chief Sims' decision to "demand the separation" of Mary Olsen was based on her gender or her race; (2) that Lieutenant Guerriero was qualified or applied for a promotion to captain or assistant chief; (3) that Chief Sims' decision not to promote Lieutenant Guerriero or to remove her from commander of internal affairs was for some discriminatory reason as opposed to the fact that she was the subject of an internal affairs investigation; or (4) that the internal affairs investigation of Agent Lucas was unwarranted or done because of her gender or race.

Plaintiff's threadbare allegations fall well below the requirement that Plaintiff plead facts that demonstrate that the "unofficial policy" of discriminating against women or white employees is a "longstanding and widespread practice" or has the "force of law" as required by binding authority. *See Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016); *Praprotnik*, 485 U.S. at 127 (emphasis added). As noted in *McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004), "[t]his threshold identification of a custom or policy ensures that a municipality is held liable only for those deprivations resulting from the decision of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* at 1290.

Plaintiff's pleading failures are glaring when compared to the allegations contained in *Whitaker v. Miami-Dade County*, 126 F. Supp. 3d 1313 (S.D. Fla. 2015). In *Whitaker*, the court granted the defendant's motion to dismiss because the plaintiff's "conclusory allegations [were] factually unsupported and [were] therefore insufficient to state a claim for an unofficial County policy [under § 1983]." *Id.* at 1320. In that case, the plaintiff cited four similar instances within one year ***and*** a letter from the Department of Justice ("DOJ") to the Mayor of Miami where the DOJ found reasonable cause to believe that the city was engaging in a practice of excessive force with respect to firearms. *Id.* at 1320. However, the court determined that the four incidents, even if they were constitutional violations, were not enough to establish a pattern. *Id.* at 1321 ("the number of complaints bears no relation to their validity").

Because Plaintiff has failed to meet her burden of pleading sufficient facts to show an unofficial policy, her claims under § 1983 against the City fail.

### IV.     **Plaintiff's Claims of Gender Discrimination in Counts I and II Fail as a Matter of Law.**

In Count I of the Complaint, Plaintiff alleges that the City and Chief Sims violated her Fourteenth Amendment right to be free from gender discrimination because six men were

promoted to sergeant. (Compl. at ¶ 16). In Count II, Plaintiff alleges that the City discriminated against her because of her gender in violation of Title VII. Both claims are premised on the same set of deficient facts.

As noted above, both § 1983 and Title VII utilize the same analytical framework. Under the *McDonnell Douglas* Test, "a plaintiff must initially establish a prima facie case, which generally consists of the following: (1) the plaintiff was a member of a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse employment action; and (4) he was treated less favorably than similarly situated individuals outside his protected class." *Fuller v. Edwin B. Stimpson Co. Inc.*, 598 F. App'x. 652, 653 (11th Cir. 2015). "Under the similarly situated requirement, the employee must prove that he and his comparators are similarly situated in all material respects. This means that the employee and his comparators must have been engaged in the same basic conduct and subjected to the same work rules." *Tamba v. Publix Super Markets, Inc.*, 836 F. App'x. 765, 771 (11th Cir. 2020) (internal quotations and citations omitted).

Here, Plaintiff alleges that six men were selected for promotion to sergeant—Meer Dean, Christopher Trapasso, Joseph Grammatico, Noel Rusczyk, Oscar Leon, and Casey Kelly. (Compl. at ¶ 8). However, Plaintiff alleges that two women—who are within Plaintiff's protected class—were promoted to sergeant as well—Gina Gallina and Brittany Brown. (*Id.*). Plaintiff fails to assert any allegations regarding the qualifications of the male counterparts, and only states that she scored higher on the promotional list. (Compl. at ¶11(a)). Yet, there is nothing about any other qualifications necessary for the sergeant position, whether Plaintiff herself was even qualified, and whether and how each male was similarly situated to Plaintiff in all material respects. Moreover, the fact that two women were promoted to sergeant tends to weigh against a claim of gender-based discrimination. The complaint must include "factual allegations ... [sufficient] to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555. Without additional information, it is far too speculative and implausible to infer that Plaintiff was passed on for a promotion solely because of her gender. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) ("The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully."). Rule 8 "demands more than ... labels and conclusions [or] naked assertions devoid of further factual development." *Iqbal*, 129 S.Ct. at 1939 (internal citations omitted); *see also Twombly*, 550 U.S. at 545. Thus, Counts I and II should be dismissed.

## V. Plaintiff's Claims of Race Discrimination in Counts III and IV Fail as a Matter of Law.

Likewise, Plaintiff's race discrimination claims in Counts III (§ 1983) and IV (Title VII) must be dismissed because of the dearth of factual allegations to show discrimination based on race or national origin. Plaintiff fails to identify the national origin of any comparator, so it is impossible to know who is within Plaintiff's class and who is not in terms of national origin. Plaintiff's allegations regarding race discrimination are particularly difficult to decipher because Plaintiff, at times, alleges she is white, and at other times, alleges she is Hispanic. However, Plaintiff's Complaint cannot be viewed in a vacuum where some "facts" are true for some counts and not for others. Taking her allegations as true, there is nothing in the Complaint that suggests that Defendants took any adverse action against Plaintiff because of either her white or Hispanic race. While the Court must accept the well-pleaded facts as true, it should "eliminate any allegations in the complaint that are mere legal conclusions." *Am. Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Again, there are no facts in the Complaint about any employee's qualifications so as to suggest, beyond conclusory statements, that Plaintiff's race/national origin was a motivating factor in any employment decision. Plaintiff's claim does not meet Rule 8's pleading requirements.

Further, Plaintiff completely ignores her obligation to assert that comparators outside of her protected class (whichever one she asserts) were not qualified for the positons, or at least less qualified than Plaintiff. On the contrary, the Complaint identifies other white and Hispanic employees who allegedly were treated better than Plaintiff. (Compl. at ¶¶ 8, 22(d)(ii)). As a result, there can be no inference drawn of intentional race discrimination under § 1983 or Title VII.

**VI.    Plaintiff has Failed to Exhaust her Administrative Remedies.**

Counts II and IV are based on violations of Title VII. As a result, Plaintiff's Complaint should be dismissed to the extent that she has failed to exhaust her administrative remedies and has exceeded the scope of the Charge. A copy of the Charge is attached as Exhibit "A."[4]

A plaintiff fulfills her obligations to exhaust administrative remedies by timely filing a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(b). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). Plaintiff filed her Charge on or about September 24, 2020. (*See* Exhibit A.). Therefore, Plaintiff may only allege she suffered discrimination under Title VII or the ADEA dating back to November 29, 2019, or 300 days prior to the filing of the Charge. *See EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) ("accordingly on those claims arising within 300 days prior to the filing of the EEOC's discrimination charge are actionable."). Thus, Plaintiff's allegations that she was passed over for promotion back in May and/or October 2019—or any allegation that she suffered any adverse employment action prior to November 29, 2019—are time-barred and outside the scope of the Charge. (Compl. at ¶ 8(a)-(c)). Defendants

---

[4] A "document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess Inc., v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340, n. 3 (11th Cir. 2005). Here, Plaintiff signed and notarized the Charge.

therefore request that any discrete events beyond the scope of the Charge be dismissed with prejudice.

### VII. Plaintiff's Claims of Age Discrimination in Counts V and VI Fail as a Matter of Law.

Finally, Plaintiff's Complaint fails to allege any facts that, taken as true, assert a claim for age discrimination under either the ADEA or the FCRA. Courts analyze claims under the ADEA and the FCRA identically. *Carlson v. WPLG/TV-10*, 956 F.Supp. 994, 1005 (S.D. Fla. 1996). To state a claim of discrimination based on age, a plaintiff must allege facts sufficient to state that (1) she is in a class protected, i.e., over the age of 40; (2) she suffered an adverse employment action; (3) that a substantially younger person filled the position that she sought; and (4) that she was qualified to do the job for which she was rejected. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Simply put, Counts V and VI are subject to dismissal because there are no facts to show that a "substantially younger person" was promoted to sergeant as required by the exceedingly light pleading requirements. All Plaintiff provides is that she is (as of the time the Complaint was filed) 41 years of age. (Compl. at ¶ 1). She provides no such information for any of the alleged comparators. Of course, as stated above *ad nauseam*, Plaintiff also fails to assert that she was qualified for a promotion to sergeant. Therefore, Plaintiff has failed to allege facts to support the third and fourth prong of her *prima facie* case of age discrimination and Counts V and VI should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Honorable Court enter an Order dismissing Chief Sims as an individual defendant under the theory of qualified immunity, dismissing Counts I through VI of the Complaint for failure to state a claim of intentional discrimination under § 1983, Title VII, the ADEA, or the FCRA, and for such other relief this Court deems just and proper.

Dated: January 25, 2022

Respectfully submitted,

WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
*Counsel for Defendants*
1200 N. federal Highway
Suite 312
Boca Raton, Florida 33432
Tel: (561) 835-2111

By: /s/ *Lindsay M. Massillon*
    Brett J. Schneider
    Florida Bar No. 012443
    Email: BSchneider@wsh-law.com
    Alen H. Hsu, Esq.,
    Florida Bar No. 62495
    Email: AHsu@wsh-law.com
    Lindsay M. Massillon
    Florida Bar No. 92098
    Email: LMassillon@wsh-law.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served by electronic filing with CM/ECF on January 25, 2022 on all counsel or parties of record on the Service List below.

By: */s/ Lindsay M. Massillon*
Alen H. Hsu, Esq.
Brett J. Schneider, Esq.
Lindsay M. Massillon, Esq.

## SERVICE LIST

STEPHANIE BENAVIDES BAKER v. CITY OF DELRAY BEACH
Case No. 9:21-cv-82076-DMM
United States District Court
Southern District of Florida

Karen Coolman Amlong, Esq.
William R. Amlong, Esq.
KAmlong@theamlongfirm.com
Eservice@theamlongfirm.com
The Amlong Firm
500 Northeast Fourth Street
Suite 200
Fort Lauderdale, Florida 33301-1154
Telephone: (954) 462-1983
*Attorneys for the Plaintiff,*
*Stephanie Benavides Baker*

Brett J. Schneider
Florida Bar No. 012443
Email: BSchneider@wsh-law.com
Alen H. Hsu
Florida Bar No. 62495
Email: AHsu@wsh-law.com
Lindsay M. Massillon, Esq.
Florida Bar No. 92098
Email: lmassillon@wsh-law.com
WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
2525 Ponce de Leon Blvd., Suite 700
Coral Gables, FL 33134
Tel: (305) 854-0800
*Counsel for Defendant*

Lynn Gelin, Esq., City Attorney
Email: gelinL@mydelraybeach.com
200 N.W. 1st Avenue
Delray Beach, Florida 33444